Your Honors, on behalf of Metropolitan Property & Casualty Insurance Company. May it please the Court. We are here today, Your Honor, to request that the Court review de novo the bench trial decision of the District Court in an insurance bad faith claim that was tried under Nebraska law. We are kind of in a unique position. When we received the District Court's findings of fact and conclusions of law, we took no exception with the findings of fact. And in fact, the conclusions of law that the Court, or I should say the cases that the Court relied upon in reaching its conclusions of law were all the cases that we had cited throughout this case. They're the right cases. It's just from the result, it's clear that the Court's analysis of that case law was clearly deficient without a reasonable basis. And the ultimate result where damages were awarded, contract damages were awarded in a bad faith claim is contrary to a number of reported Nebraska decisions. And so we would ask that the Court reverse the trial court's decision using its findings of fact, using the same cases that the District Court relied upon, and reversing it in order to pull this case in line with controlling Nebraska law. What we ended up with was a finding of bad faith on the part of an insurance carrier where there was no proof of a contract. Well, you're saying there was no proof of a contract. There clearly was a contract. You're just saying you voided it and so it never existed. But that doesn't necessarily mean there was never a contract. Well, you're correct, Your Honor. It was voided, it was rescinded. And Nebraska case law and case law throughout the country is that a rescission is as if it never existed. So you're saying an insurance company can always avoid a bad faith claim by voiding a contract through rescission? No, Your Honor. Nebraska doesn't require judicial rescission. MetLife or Metropolitan was allowed to rescind the policy. That's my point. You can unilaterally rescind and insulate yourself from a bad faith claim. No, Your Honor. If the insured disputes the rescission, they have the right to file a breach of contract action and have the court determine whether the rescission was proper. In this case, a breach of contract... Does that bring us to the counterclaim? The counterclaim would be that we should take this up and conclude that the court erred in dismissing the breach of contract clause? It's tied together. And Nebraska is also unique, Your Honors, in allowing only in cases of fire insurance for a lesser limitations period in the policy if it complies with the New York Standard Form fire policy of 1944. The statute in Nebraska that allows for the lesser limitations period is section 44-501. And that's what we're dealing with here. The policy stated that in order for a cause of action to be filed against Metropolitan, there had to be compliance with all the policy provisions and you had to file suit within one year. What if the insurance company hasn't decided on the claim within a year? What's the insured to do then? There can still be compliance. As under the language of the New York Standard Form policy and the MET policy, which is in the record, there can be compliance, cooperation, providing information, sitting for EUOs, and filing within the one year is still compliance. Because in order to maintain the suit, you need to cooperate and file suit within one year. Now, the investigation is still going on. What would be the cause of action if the insurance company hasn't made a decision yet on the claim? What are they supposed to file in court within a year? It would be a cause of action for breach of contract. They've submitted a claim. They contend that benefits are due under the policy. The carrier has not made the decision favorable to the claimant and the issue becomes... Does the contract require a decision within a year by the carrier? It does not. What would be the breach of contract claim? That the claim was submitted and that there was no favorable decision rendered in a time frame acceptable to the insured. But you just said the policy doesn't provide that it must be made within that time period. There's no completion requirement on the cooperation condition in the policy. So the way you've just defined it, as I understand it, is there is no valid claim within a year, but the suit must be filed within a year. And then if the claim is denied after 13 months, the claim for breach of contract is untimely. Is that really the insurance company's position? No, Your Honor. I disagree with the characterization there. The claim submitted is that benefits are due under the policy. The carrier is entitled to conduct its investigation and the insurer is entitled to a decision within a reasonable time. But wouldn't there be an obligation to conduct that investigation in good faith? Yes, Your Honor. And the record shows that the investigation was conducted in good faith given the nature of the claim and the information that was developed. Okay. So you're saying it was a good faith investigation that just took more than a year in this case and therefore there was no breach of contract at the one-year mark, so they couldn't have filed a meritorious breach of contract claim simply because the investigation was still going on? I disagree, Your Honor. If the claim is not accepted within the one-year period, in order for the insurer to have a claim on the policy, the New York Standard form and the MetLife policy require that you file suit within that one year if your decision on benefits owed has not been accepted. But you're going to defend on the ground that we're still investigating so we haven't breached. No, I don't think that would be the position, Your Honor. The position would be you filed suit within the one year. The claims of extrication, if it's still ongoing, will then transition into the discovery period or hold the case in abeyance while the claims investigation is completed. But we never reached that point. There's a couple of Nebraska cases that I believe are on point, Your Honor. You'll see in the briefing materials there's the Lorette decision and then there's the Lynch decision. The Lorette decision essentially establishes that in a Nebraska law you do not need to prevail in a breach of contract action. You just need to prove that a contract exists in order to maintain a bad faith claim if the bad faith claim is separate and independent from the breach of contract claim. The Lynch case stands for the proposition and holds that where an insured is claiming benefits under a policy that does not provide for such benefits, in other words, there's not a contract that exists that can provide the benefits sought, there's no proof of a contract. But the only reason you're saying there's no contract is because you rescinded it. It was rescinded, correct, Your Honor. Now, you say an insured can challenge the company's unilateral rescission. Is that right? Correct. Now, would the party have one year from the date of rescission to make that challenge? No, Your Honor. Why not? Based upon the conditions of the policy, in order to meet all conditions preceding the filing suit, any suit on the contract has to be filed within one year. But suppose the insurance company rescinds the contract after 364 days. Does the insured have an opportunity to challenge it? Well, I think it's incumbent upon the insured, if they're disagreeing with the length of the investigation, they have the right to file suit. No, no, I'm talking about the rescission. If the rescission is made on the day 364 and the policy condition runs on 365, is what you're saying? No, I'm asking you, if you rescind somebody's policy after, say, 364 days, and you're saying the insured then may sue and challenge the rescission, what's the time period in which the insured may file suit? It would be one year. One year from the date of rescission? Correct, Your Honor. No, not from the date of rescission. One year from the date of loss in accordance with the policy provisions of the New York Standard Form and the MetLife policy. So you've taken it back to our first question. It sounds like you could insulate yourself entirely from a bad faith claim by unilaterally rescinding at the end of the one year. That is not what happened here, and I'm not seeing that hypothetical where if a rescission had occurred on day 364... Or 366. Or 366, if the investigation was legitimately ongoing, then under the way the policy conditions are written and the way the Nebraska law is, that limitation period is valid. But isn't that the claim here, is that it wasn't legitimately ongoing? Everything you needed to know about this claim to determine whether you would cover it was known well in advance of 365 days. Your Honor, we disagree with that conclusion. The court suggested that. Well, that's the record we have. If Metropolitan had rescinded this policy in the first two weeks after it conducted its investigation, then that would be bad faith. MetLife undertook an extensive investigation. We had an insured who tried to insure a single-family home, and it turns out he had multiple apartments in it and was running three businesses out of it. That wasn't all known within two weeks. We knew he had a tenant in there at the time of the fire. We didn't know the extent of the tenancy, how long it had been going on. Through the course of a year of investigation or more, we determined that he had a series of tenants in there, upwards of three different apartments. So the length of the investigation, new information was constantly being developed, and the record will also show that there was significant delay occasioned by the insured's conduct in cooperating with Metropolitan. And I'm in my rebuttal time now. Do you have any authority that says if an insurance company rescinds a policy unilaterally that the time that the insured has to challenge that rescission is governed by the policy as opposed to the ordinary statute of limitations? Your Honor, case law, I will look into that. It might be in my brief, but it boils down simply to this is a contract, and if you're going to sue on the contract, either for breach or... I understand if you're going to sue on the contract for breach of contract, but I'm talking now about challenging the insurance company's rescission of the contract. Do you have any authority that says that's a suit on the contract that's governed by the insurance policy limit as opposed to a separate claim that's...? Yes, Your Honor. The cases I recited by the court, even, Robinson v. State Farm Mutual Auto Insurance is a defense and avoidance of an action on a contract. That's essentially what a rescission is. It's an avoidance of a contract. So they'd have five years to bring that case then, wouldn't they? No, Your Honor, not in a fire policy case. Based on statute section 44-501, Nebraska adopted the New York Standard Form policy. And there's a case that Wolf, that Mr. Hayes cites, in that case it was a hail claim. So your arguments regarding a five-year statute of limitations would apply in a hail claim as opposed to a fire claim because a lesser limitations period for a hail loss is not otherwise prescribed in the statutes, whereas it is for a fire loss. Do you have any answer to the Hiram Scott case? Yes, Your Honor. Hiram is distinguishable in this case. I addressed it in my brief. I saw that, but I wondered if you had anything better. Could I reserve the remainder of my time and address that question on rebuttal? Yes, you may. Mr. Jolly. Thank you. Good morning, Your Honors. I'm C.G. Jolly with Adams & Sullivan, and seated at the council table with me is Travis Jaycott, who also was an attorney on this case and helped in drafting the briefs. First, I think it's important, obviously the court knows what the standard of review here is, so I don't want to belabor that point, but Mr. Moran had indicated that there was no exception by the appellant to the facts in this case, and that being the case, it seems to me that he sort of deviated from that at the end of his argument in trying to expand on those facts. So what I'd like to do is point out some of the facts that form the bad faith claim, but also strongly indicate that at least for 15 or 16 months while MET was, quote, investigating Mr. Hayes' claim, it was doing so under the policy, and it was using the policy provisions requiring an insurer to cooperate with the investigation to gain his compliance and ultimately have him submit to three different examinations under oath for a total of about 22 hours of testimony and thousands of pages of documents that were produced at METLife's request under the policy, which didn't exist when Mr. Hayes tried to invoke his rights under the policy and assert his claim. Yes, sir. He's essentially arguing that you have to file your bad faith claim before you've acted in bad faith, before they've acted in bad faith if they stretch it out long enough. Yes, Your Honor, and to more specifically address the court's different factual scenarios, if at 364 days there was a rescission, under the position that MET has taken at trial and on appeal, Mr. Hayes would have one day, one day to file suit. And in this situation, as of January 24th of 2014, which would have been the one-year anniversary of the loss, there was no reason that Mr. Hayes, he didn't have a reasonable basis to believe that his claim had been denied because it hadn't actually been denied. In fact, he submitted to an EUO on January 3rd of 2014, and on that same day a subsequent EUO was scheduled for February 4th of 2014. So MET was still, at least we believed that MET was still investigating, although I think that the facts developed at trial show that that was nothing more than a ruse. Remind me, when was the rescission formally communicated? Yes, Your Honor. It was August 5th of 2014. Which was how long after the fire? It was a little more than 18 months after the fire, Judge. So this is a case where the rescission actually was more than a year. Yes, sir. So under their view it sounds like you can't challenge the rescission because you're outside the year. Right, that's correct, Your Honor. Did you ever file anything? You didn't file a separate action. I wondered about why you didn't challenge the rescission. As far as why I didn't plead the challenge of the rescission. It doesn't matter why at this point, but you didn't. If I had to do it all over again, Your Honor, I would. But I think that the... Maybe their position on statute of limitations is wrong or unreasonable on that, but you didn't file a claim to challenge the rescission, so you can't really blame them on that one. Well, we challenged the rescission as to what it actually was. They called it a rescission, but it was, as the lower court determined, it was a de facto denial of the claim. If you look at the reservation of rights letters that were in the record, each time that MET reserved its rights, it noted basically there were two reasons it was continuing its investigation and was reserving its rights to pay or not to pay under the policy. One was that the causation of the fire. In other words, did Mr. Hayes, as an insured, did he have anything to do with the causation of the fire, whether directly or indirectly? And the second one was the change in occupancy. And the first reservation of rights letter doesn't tell us specifically what they mean by that, but the second reservation of rights letter, which I believe is February 8th of 2013, I believe that one did cite to the policy, but only to the intentional loss provision. And so when we filed the lawsuit in October of 2014, I sued on breach of contract and I sued for the bad faith investigation, handling of the claim, failure to settle. I see. And ultimately— So you're saying you were thinking that the rescission was in effect the denial and that's why you framed it as a breach of contract challenging the denial? Yes, Your Honor. I see. And in our amended complaint, we did make that allegation. In fact, I believe that MET even admitted the allegation in our amended complaint, stating that they denied the claim. Now, again, I think that that's just a term of— maybe it's more of a general term that was used prior to trial, and as we got closer to trial, MET realized that we can't say that we denied the claim because there was no claim. We're instead going to assert that there was no contract. If there's no contract, then there can't be a claim, at least not a valid claim that can be submitted. On March 28th of 2013, and this is in the record, I believe, pages 127 to 131, the testimony in trial established that as of that date, MET had everything in its possession that it needed to rescind the policy, at least that it—let's put it this way— had everything in its possession that it used 15 months later to rescind the policy. It had the application. It had the information. It had Mr. Hayes' file from One Way Insurance, which was his adjuster. So they had everything as of March 28th of 2013. Then there was the first examination under oath, June 27th of 2013, which was about six hours of testimony. That was also developed in the record at trial. And after that point, you would think that MET, who has in its possession a three-page application for insurance and six hours of testimony from Mr. Hayes, could have made a pretty good determination at that point whether or not to rescind the policy. And so you can infer easily from these facts that MET took a gamble, decided not to rescind at that time, probably because we were still within that one-year statute of limitations. Now, shame on me for not filing something by January 24th of 2014, but I think even if I had, MET would have probably have successfully had that dismissed because there was no breach as of the one-year anniversary. There was still an investigation. And that segues into our cross-appeal. There is very different language between the New York Standard Fire Policy and MET's policy. The New York Standard Fire Policy's one-year statute states that an action will not be sustainable if it's brought more than one year. MET's policy says you cannot bring an action or suit against us unless you do it within one year, and you must have fully complied with all provisions of the policy. So as of January 24th of 2014, as Mr. Hayes' attorney, I knew that we had an examination under oath scheduled for February 4th. I knew that there were still documents that were being requested, and so the investigation was still going. So as of the anniversary date of the fire, MET had not breached the policy. MET had not made any indications that it wasn't going to pay the claim. In fact, why would MET still be investigating if it wasn't considering paying the claim? Well, it's my position after the fact that MET never did plan on paying the claim, but instead relied, I guess, on... What relief do you want on the cross-appeal? Well, Your Honor, I'm hoping there isn't any relief that's necessary on the cross-appeal because I'm asking that if this Court affirms MET Life's appeal, that our cross-appeal becomes a moot point. I see. If you prevail on the bad faith claim, is that the idea? Then you're cross-appealing and you're not worried about it. I'm not, Your Honor, other than to the extent that I think this is a very real problem. I don't know how many other insureds have this issue out there. Your Honor, I wonder, does the cross-appeal help you on MET Life's appeal? In other words, if the contract claim should have remained in the case, does that help you defend against the MET Life appeal, which says you can't have a freestanding bad faith claim? I think it does help to that extent. I disagree with their characterization of the law because I think the law is pretty clear with the Bresch case and Lorette that you can't have an independent claim for the bad faith cause of action. I believe that in the Bresch case and also cited later, and I believe, Lowry, that one of the principles underlying a bad faith claim is not that there is a policy that creates this relationship like a fiduciary relationship. Instead, it's a public policy based on good faith and fair dealing. It takes into consideration the very disparate bargaining positions that a residential insured may have with an insurance company. Obviously, the facts in this case bear that out because for 15 or 16 months, Mr. Hayes was producing documents to MET. He was showing up for examinations under oath. He had his personnel file opened by MET with his consent at his former employer's office on April 17th of 2014, which was 15 months after the fire. So he had done everything, and MET had demanded all of that because their policy required that he submit to those things. Their policy required that he show up for the examinations under oath and that he produce documents. He did all of that, and that policy existed even for Springfield State Bank, who was a third-party beneficiary of the policy because they were the mortgage holder. When MET rescinded the policy or attempted to rescind it, on August 5th of 2014, on that same day, MET sent the mortgage payoff check to Springfield State Bank, and that's Exhibit 33 in the record. On the notation of the check, it says, mortgage, I'm sorry, dwelling coverage A for mortgage. So it even cites on their payoff check to Springfield State Bank that that payment was being made under provision A for dwellings in their policy. So as it applied to MET, there was a policy. As it applied to Springfield State Bank, there was a policy. When Mr. Hayes asked that his claim be paid, there was no policy. Not only was there not one then, it has never existed. And that, in effect, was the denial of the claim. Your bad faith claim, you're familiar with Bailey v. the Farmers Union Co-op Company in Nebraska? I am, Your Honor. Well, that indicates that a bad faith claim is established when there's no reasonable basis for denying the claim, and they sure knew or were reckless in this regard for lack of reasoning. It seems to me that that takes you out of the one-year statute of limitations and prompts the five-year statute of limitations in the state of Nebraska. Did you make that argument? In my cross appeal, I guess, in my cross appeal I did, Judge, I did make that argument in our response to MET Life's appeal. But I do agree with the court that it wants that. Well, I guess the bad faith claim as a tort in Nebraska may have a four-year statute, I guess. Yes, sir. But I believe that the fact that the MET policy varies in language from the New York standard policy and I believe that MET's conduct, those two things combined, I think certainly push this into a five-year statute of limitation on the breach of contract, which is the statute of limitations, obviously, for written. But the insurance regulations do seem to adopt the New York standard policy as one-year statute of limitation, right? They do, Your Honor. I think the statute's 44-501, but the policy has to substantially comply to the New York standard policy. So when the New York standard policy says a lawsuit may not be sustained, it's not telling Mr. Hayes he can't file it. He's just saying you cannot sustain it unless you file it within a year and you fully complied. So you have basically a dual obligation. Mr. Hayes would have the lawsuit going forward, and then he would also still be complying with MET's investigation. But the MET policy specifically says you cannot sue us unless you bring it within a year and have fully complied. Thank you. Mr. Moran? A rebuttal? Thanks, Your Honors. May it please the Court. I'll first address the Hiram Scott question that I had on the first go-around. There is a case that is opposite Hiram Scott, and it was briefed in the motion to dismiss, so it's in the record. I addressed it here. The reason Hiram Scott's distinguishable is simply because it never reached the question of whether or not a lesser limitations period was otherwise prescribed. And it is, and so the district court was correct in that regard. In terms of the bad faith conduct that the court identified, it was an email that was sent in May of 2014 and the August 5 rescission. The damages that were awarded in no way are connected to that bad faith conduct that was found by the court. There's no finding of proximate cause. How any conduct of MET proximately caused some economic harm to Hays. MET's position that the absence of a finding of proximate cause makes the award of damages incorrect, and it must be reversed. Also, the court awarded attorney's fees in this case, and through the briefing materials, I believe Mr. Hays concedes that if the fees are awardable, they're only awardable under 44359. However, here, there was never any final adjudication of MET's liability on the policy, and therefore 44359 does not apply. For the reasons set forth today and in our briefing materials, we respectfully request that the court reverse the district court's decision, and based upon controlling law in Nebraska, enter judgment in favor of Metropolitan Property and Casualty. Thank you, Mr. Warren. Thank you also, Mr. Jolly. We appreciate both counsel's presence and argument to the court this morning. We'll take the case under advisement. Madam Clerk, would you call the next case, please? The next case for argument is Marshall v. Anderson Excavating and Wrecking Company.